**Michael GRAY, Appellant,**

v.

**WASTE RESOURCES, INC., Appellee.**

No. 14–05–00929–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 27, 2007.

Don D. Becker, Houston, for appellant.

Michael Kenan Oldham, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Michael Gray, appellant, obtained a jury verdict in his favor in a suit for fraud against Waste Resources, Inc. ("WRI"). The jury awarded Gray $1,100,000 in actual and exemplary damages. However, the trial court subsequently granted WRI's motion for judgment *non obstante veredicto* ("JNOV") on the ground that Gray presented (1) no evidence to support one or more essential elements of his fraud claim and (2) no evidence to support the jury's finding of damages. In a single issue, Gray contends the trial court erred in granting WRI's motion for judgment notwithstanding the verdict. We affirm.

Gray founded WRI with Pierre Morow in 1994. Gray and Morow each owned 50% of the stock. Gray's responsibilities included sales, and he had the title of chief executive officer. Morow's responsibilities included the financial side of WRI, and he was president. In 1997, the corporation needed legal representation, and WRI hired Bruce Daniel to represent it in several lawsuits. In lieu of legal fees, Gray and Morow each conveyed 12.5% of their stock to Daniel. This reduced Gray's and Morow's shares to 37.5% each, with Daniel owning 25%. WRI had a persistent shortage of cash. Often, WRI juggled vendor's payments, causing bills to run thirty to sixty days past due.

During 1998, Gray and Morow's friendship disintegrated. In December 1998, Morow and Daniel voted to terminate Gray. Gray retained his 37.5% interest in WRI and a seat on the board of directors. However, at a special director's meeting on

January 8, 1999, the board voted to remove Gray as a director, raise $50,000 capital through the issuance of additional shares of stock,[1] and to sell the front-load division of the corporation. Gray voted against the plan. Under the plan, each shareholder would have an equal opportunity to preserve his pro rata share of WRI by purchasing equivalent shares of stock for one dollar each.[2] Thus, Gray was requested to pay $18,750. Gray failed to purchase any shares by the January 15, 1999 deadline. On January 26, 1999, Daniel sent a letter to Gray stating no agreement had been reached to sell the front-load division, but the corporation was currently negotiating a sale. The next day, January 27, 1999, WRI sold the front-load division for $1,450,000.

WRI informed Gray of the sale in a letter dated January 28, 1999. WRI extended the deadline for Gray to purchase additional shares under the recapitalization plan until February 22, 1999. Again, Gray failed to purchase any shares. As a consequence, Gray's shares were diluted until he owned no part of WRI.

In November of 2002, Morow and Daniel sold WRI for $3,500,000, earning approximately $2,700,000 in profits. Gray brought suit for fraud alleging misrepresentations by WRI. Although Gray obtained a favorable jury verdict, the trial court granted WRI's motion for JNOV. In his sole point of error, Gray contends he presented more than a scintilla of evidence on each element of fraud, and the trial court erred in granting a JNOV.

■ A JNOV should be entered when the evidence offered to prove a vital fact is no more than a scintilla. *City of Keller v. Wilson*, 168 S.W.3d 802, 810, 823 (Tex.

2005). In conducting a no-evidence review, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807. Proper legal sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors, but proper review also prevents jurors from substituting their opinions for undisputed truth. *Id.* at 816–17. When evidence contrary to a verdict is conclusive, it cannot be disregarded. *Id.* at 817.

■ Gray submitted only one cause of action to the jury—fraud. The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998).

In its judgment, the trial court stated Gray failed to present any evidence for one or more of the elements of fraud. We focus on the reliance element.

■ Reliance is a necessary element of common-law fraud. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex.1997). The reliance must be reasonable and justified. *Gilmartin v. KVTV— Channel 13*, 985 S.W.2d 553, 558 (Tex. App.-San Antonio 1998, no pet.). To prevail on a fraud claim, a plaintiff is required

---

1. Referred to as the equity recapitalization plan or the plan.

2. The maximum number of shares each shareholder could purchase was Gray 18,750, Morow 18,750, and Daniel 12,500.

to demonstrate that he relied upon a fraudulent misrepresentation to his detriment. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930–31 (Tex.1983). Gray, as a plaintiff, needed to show he failed to purchase his pro rata shares of WRI under the equity recapitalization plan because of his reliance on a misrepresentation by WRI.

 The record shows Gray attempted to borrow money in order to purchase the shares, but was unable to secure financing. Gray cites this as proof of his reliance on statements by Morow and Daniel that WRI needed the money. The fact that Gray attempted to secure a loan does not satisfy the reliance element. The jury charge defined justifiable reliance as *"Belief* in the misrepresentation at the time made and *acted* upon it." (Emphasis added). Thus, Gray needed to show he did not purchase the shares because these misrepresentations induced him to forego his opportunity to purchase the shares. Gray repeatedly testified he would have purchased the shares if he had been able to borrow the money. Gray also stated he did not believe the statements by Morow and Daniel that WRI was in such serious financial straits the equity recapitalization plan was necessary. Gray testified he would have voted in favor of the plan if he had believed WRI actually needed the money to survive. Gray's testimony negated any possible reliance he might assert regarding the alleged misrepresentations about the financial health of the company.[3] The jury could not disregard the undisputed truth of plaintiff's own testimony. Thus, there was no evidence of reliance on Gray's part, and the JNOV was proper.

Accordingly, we overrule Gray's sole issue and affirm the judgment of the trial court.

---

**3.** Gray introduced into evidence a letter dated January 27, 1999, that stated WRI had no agreement to sell the front-load division, but was negotiating for its sale. WRI in fact sold the division the next day. Gray cites this as another misrepresentation. Even assuming Gray's assertion of a misrepresentation is true, it is irrelevant. WRI provided Gray with an additional opportunity to purchase shares *after he became aware of the sale.* Therefore, Gray's failure to purchase the shares could not have been due to a misrepresentation concerning the division's sale.