**Affirmed and Memorandum Opinion filed March 29, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00673-CV

_____

**GLENN FLOYD SMITH, Appellant**

**V.**

**CLEMENT ALDRIDGE, JR., Appellee**

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 09CV0009**

## MEMORANDUM OPINION

Glenn Floyd Smith, appearing pro se, appeals the summary judgment granted in favor of Clement Aldridge, Jr. In three issues, Smith challenges the grounds for the summary judgment as well as the trial court's refusal to appoint a special master. We affirm.

## BACKGROUND

Aldridge is a licensed attorney in the state of Texas. In December 2005, he filed suit on behalf of Smith and sixty-six other inmates of the Galveston County Jail, seeking relief from the County for a food poisoning incident that allegedly occurred in March 2004. Following discovery, the County presented Aldridge with a motion for summary judgment and a nuisance-value offer of settlement. After evaluating the damages sought by each inmate and the defensive merits of the County's motion, Aldridge wrote to his clients, encouraging them to accept the settlement. All of them did, except for Smith.

When Smith refused to settle, Aldridge withdrew from the case with the permission of the trial court. Smith litigated his case without representation, and as warned, a summary judgment was taken against him.

In January 2009, Smith filed suit against Aldridge, proceeding pro se once again. In his live pleading, he alleged causes of action for negligence, breach of fiduciary duty, fraud, breach of contract, and violations under the DTPA. The trial court entered a docket control order setting the deadline for the designation of testifying experts in February 2011. In June 2011, after no experts had been designated, Aldridge filed a motion for summary judgment arguing that the various claims against him represented a single cause of action for professional negligence, which failed as a matter of law in the absence of expert testimony. Aldridge also submitted that the summary judgment evidence conclusively established that he met the appropriate standard of care.

Smith filed a response along with an unsworn declaration. The trial court granted summary judgment in favor of Aldridge without stating its reasons. This appeal followed.

## SUMMARY JUDGMENT

In his first issue, Smith argues that the trial court erred by "failing to specify its reasoning for summary judgment" and by "deciding summary judgment without a hearing or finding of facts." Construing his brief liberally, we understand Smith's argument to be a

general challenge to the grant of summary judgment. *See Nabelek v. Bradford*, 228 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that courts liberally construe pro se filings, but still hold parties to the same standards as licensed attorneys).

We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of his cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). In this context, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We review the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to that

3

party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller*, 168 S.W.3d at 827. We will sustain a no-evidence summary judgment when (a) there is a complete absence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

Where, as here, the trial court does not specify the basis for granting summary judgment, we will affirm the summary judgment if any of the independent grounds for summary judgment is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

In his motion for summary judgment, Aldridge argued that the various claims against him constituted a single cause of action for professional negligence, which the law prohibits from being fractured into other non-negligence causes of action. Aldridge then asserted that Smith's claim fails as a matter of law because Smith proffered no evidence of causation. We examine Smith's negligence claim first, then consider whether his remaining causes of action are subject to the rule against fracturing.

### A. Negligence

An attorney in Texas is held to the same standard of care exercised by a reasonably prudent attorney. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). This is a duty of ordinary care. *Id.* If an attorney makes a decision that could be made by a reasonably prudent attorney under the same or similar circumstances, he may not be held liable for his actions even if the result is undesirable or imperfect. *Id.* at 665. By contrast, "a lawyer can commit professional negligence by giving an erroneous legal opinion or erroneous advice, by delaying or failing to handle a matter entrusted to the lawyer's care, or by not using a

4

lawyer's ordinary care in preparing, managing, and prosecuting a case." *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied).

To recover on a claim for professional negligence, a plaintiff must prove that (1) the attorney owed a duty of care to him, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). To establish proximate cause in a case based on prior litigation, the plaintiff must demonstrate that he would have prevailed in the underlying case but for the attorney's breach. *Duerr v. Brown*, 262 S.W.3d 63, 76 (Tex. App.—Houston [14th Dist.] 2008, no pet.). This burden is often regarded as the "suit within a suit" requirement. *McInnis v. Mallia*, 261 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Ordinarily, proving this causal link must be accomplished by expert testimony because "the wisdom and consequences of . . . tactical choices made during litigation are generally matters beyond the ken of most jurors." *Alexander*, 146 S.W.3d at 119.

Smith alleged that Aldridge was negligent because he engaged in "unreasonable, incompetent practitioner standards." In his live pleading, Smith complained that Aldridge engaged in compromised settlement demands as a means of avoiding negative publicity and prohibitive mediation expenses. Smith also complained of several specific omissions, including Aldridge's failure to (1) compel discovery; (2) "conduct a proper voir dire examination" of a nurse; (3) investigate the jail's ventilation system; (4) challenge the Health District's policy of destroying food samples; (5) secure the names and addresses of two kitchen workers capable of testifying about the manner in which food is handled; (6) show that the jail acted with deliberate indifference in a prior food poisoning incident; (7) challenge the jail's policy for collecting stool samples; (8) supply copies of all pleadings, motions, and other legal documents; and (9) produce evidence that would defeat the County's motion for summary judgment.

Smith does not dispute that he failed to designate an expert witness within the deadlines imposed for discovery. Without acknowledging whether expert testimony was needed to prove his claim, he maintains that summary judgment was improper because he requested the appointment of an attorney to assist in obtaining an expert witness. The trial court denied that request.

In the absence of expert testimony regarding causation, we must consider whether an expert witness was actually required in the underlying case. The trier of fact must have some evidentiary basis for establishing a causal link between an attorney's asserted negligence and the client's asserted harm. *Cooper v. Harris*, 329 S.W.3d 898, 901–02 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In some cases, the client's own testimony may provide this link, but in others, expert testimony is needed because the issues pertain to areas beyond the jury's common understanding. *Alexander*, 146 S.W.3d at 119.

The causal relationship alleged in these pleadings is not so apparent as to obviate the jury's need for expert testimony. Smith proceeded on a theory that he was harmed because Aldridge engaged in settlement demands unreasonably, incompetently, and as a means of avoiding media attention and the costs of mediation. Expert testimony is necessary to prove this claim because the wisdom of entering into settlement discussions is tactical and not within the common understanding of most jurors. *See Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex. App.—Houston [14th Dist.] 1997) ("Settlements of personal injury and wrongful death cases involve experience and specialized knowledge."), *aff'd in part, rev'd in part on other grounds*, 997 S.W.2d 229 (Tex. 1999); *Gallagher v. Wilson*, No. 2-09-376-CV, 2010 WL 3377787, at *5 (Tex. App.—Fort Worth Aug. 26, 2010, no pet.) (mem. op.). Smith also alleged that Aldridge was negligent because his investigations were deficient and because he failed to marshal enough evidence to defeat the County's summary judgment. Lay jurors are not familiar with summary judgment standards, and thus, expert testimony would be needed to establish that any evidence produced would

6

have been sufficient to preclude summary judgment. Similarly, expert testimony would be needed to prove Smith's claim that he would have prevailed at trial but for Aldridge's failure to supply him with copies of the pleadings, motions, and other legal documents.

To avoid summary judgment, Smith was required to submit competent evidence of causation to the trial court. Smith's request for the appointment of counsel to assist with this matter did not relieve him of his summary judgment burden. Because he proffered no expert testimony to establish the causal link, the trial court properly granted Aldridge's no-evidence summary judgment as to the negligence cause of action. *Cf. Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274–75 (Tex. App.—Austin 2002, pet. denied) (affirming no-evidence summary judgment where expert affidavit was excluded and party proffered no other expert testimony); *Sprowl v. Dooley*, No. 05-06-00359-CV, 2007 WL 1330447, at *2–3 (Tex. App.—Dallas May 8, 2007, no pet.) (mem. op.).

**B.     Additional Claims**

We now consider whether summary judgment was appropriate as to Smith's remaining causes of action. In addition to his claim for negligence, Smith asserted claims for breach of fiduciary duty, fraud, breach of contract, and violations under the DTPA. Aldridge argued in his motion for summary judgment that these claims represented a single cause of action for negligence, and that they could not stand independently because of the rule against fracturing.

The rule against fracturing provides that a claimant for legal malpractice may not opportunistically transform a claim sounding in negligence into separate non-negligence causes of action. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This does not mean that a client is limited to pursuing only negligence causes of action. Other claims may still be advanced simultaneously, but the client must do more than merely reassert the same claim for legal malpractice under an alternative label. *Duerr*, 262 S.W.3d at 70.

When deciding whether an allegation states a claim for negligence or some other cause of action, we are not bound by the parties' own characterization of the pleadings. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427–28 (Tex. App.—Austin 2009, no pet.). Our analysis focuses primarily on the facts alleged and ascertaining whether those facts implicate an attorney's duty of ordinary care or some other independently actionable duty. *Id.* at 428. As this court has stated previously,

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence.

*Deutsch*, 97 S.W.3d at 189 (citations omitted). Our analysis may also be guided by the remedy the plaintiff seeks. *See Murphy*, 241 S.W.3d at 698.

### 1. Breach of Fiduciary Duty

The elements of a breach of fiduciary duty claim are (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In some formal relationships, including the attorney-client relationship, a fiduciary duty arises as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). In negligence cases against attorneys, the standard of care is often defined by the characteristics of that inherent fiduciary relationship. *Murphy*, 241 S.W.3d at 696. However, not every breach of fiduciary duty claim is actionable separately from a claim for professional negligence. *See Beck*, 284 S.W.3d at 429. To distinguish between the two, courts have generally held that a breach of fiduciary duty claim focuses on whether an attorney obtained an improper benefit from representing the client, whereas a negligence

8

claim focuses on whether the attorney represented the client with the requisite level of skill. *Id.* "An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve those ends." *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.).

Smith argued that Aldridge breached his fiduciary duty based on his failure to: (1) "conduct a proper voir dire examination" of a nurse, which allowed him to engage in secret settlement demands; (2) forward legal documents to Smith, which kept Smith misinformed about the status of his case; (3) challenge the Health District's order to destroy food samples, which allowed the County to argue that his illness was caused by some unknown factor; (4) secure key witnesses; (5) challenge the stool sample collection, which led him to believe he could not obtain a favorable jury verdict; (6) "establish what food-borne pathogens were and how they [a]ffect food items"; (7) show that the jail acted with a pattern of deliberate indifference to inmate health; (8) seek an independent evaluation of stool samples; and (9) test blood, saliva, and air samples. These are the same operative facts as Smith's claim for professional negligence. Because they all generally assail the adequacy of Aldridge's representation, the rule against fracturing would bar this claim as an independent cause of action.

In his live pleading, Smith also alleged that Aldridge "employed a bait and switch scheme, in which he sought inmates, to gain their confidence and promise services for recovery for damages." Smith proffered no facts to support this claim in his response to Aldridge's motion for summary judgment. In his unsworn declaration, he merely attested that Aldridge "engaged in self-dealing," without specifying how.

Assuming these allegations supported an independent action for breach of fiduciary duty, summary judgment was still proper as to this claim. Smith's claim for damages was

9

based on the outcome of the underlying proceeding. To demonstrate that Aldridge's breach caused these damages, Smith was required to prove a "suit within a suit." *See Finger v. Ray*, 326 S.W.3d 285, 291–92 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Based on the nature of this claim, we believe expert testimony was necessary to prove causation, and Smith did not proffer any evidence to that effect.

### 2. Fraud

The gist of a fraud claim is deception as to an existing fact. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied). To recover on an action for common law fraud, a party must show that (1) a material representation was made; (2) it was false; (3) when the speaker made it, he knew it to be false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) he thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Gray v. Waste Resources, Inc.*, 222 S.W.3d 522, 524 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Smith argues that Aldridge fraudulently represented a material fact on two separate occasions: (1) when he said that he would not settle Smith's case without gaining Smith's prior approval; and (2) when he said that he was actively preparing for trial after initial settlement demands had been rejected. We need not decide whether these claims for fraud are separate and distinct from Smith's cause of action for professional negligence. In his motion for summary judgment, Aldridge argued that these fraud claims must fail because, in addition to the rule against fracturing, there was no evidence that Aldridge uttered a false statement, that he intended Smith to act on a false statement, or that he caused Smith to rely on a false statement to his detriment.

Aldridge informed each of his clients that their individual approval was needed before a settlement could be finalized. This representation was made both in a contingency fee contract and in a letter addressed to each client. In a separate letter, Aldridge advised

10

his clients that the County had offered $5000 in exchange for a complete release and dismissal of claims from all inmates. Aldridge said that he rejected that offer and that he has "resumed preparation for trial." Smith's unsworn declaration merely alleges that Aldridge engaged in fraud. His response did not raise a single fact issue suggesting that either statement was false at the time it was made. Without competent evidence, summary judgment was proper as to Smith's claim for fraud.

### 3. Breach of Contract

To recover on a breach of contract, a plaintiff must prove that (1) a valid contract existed between the plaintiff and defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

The basis for Smith's breach of contract claim is not entirely clear from the pleadings. In his brief, Smith argues that Aldridge was "obligated by contract" to perform a number of tasks. These included (1) forwarding copies of the pleadings, motions and other legal documents; (2) keeping Smith reasonably informed about the status of his suit; (3) challenging why the Health District destroyed the food samples; (4) securing the names and addresses of kitchen employees; (5) challenging the Health District's decision to collect a small sample of stool specimens; (6) securing independent expertise on the subject of food-borne pathogens; (7) pursuing complaints against the Health District for failing to disclose prior incidents of prisoner food poisoning; and (8) re-testing certain stool samples. Smith has not produced any contract expressly enumerating such duties. From what we can discern, these claims, like his claims for breach of fiduciary duty, are merely relabeled claims for professional negligence. *See Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied)

11

("[A]s long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice.").

Smith also attested in his unsworn declaration that Aldridge breached the contingency fee contract by engaging in secret settlement demands. Here, as well, Smith produced no evidence that Aldridge's actions violated the provision of a contract. The contingency fee contract states that no claim may be settled without Smith's consent. The contract does not further preclude Aldridge from engaging in settlement negotiations without the permission of his client. Indeed, the summary judgment conclusively established the opposite. Under the terms of the contract, Smith agreed to retain and employ Aldridge "to sue for and recover all damages and compensation to which the Client may be entitled as well as to compromise and settle all claims related to the Galveston County Jail Food Poisoning Incident." The trial court did not err in granting summary judgment on this claim for breach of contract.

### 4.    DTPA

To prevail on a DTPA claim, a plaintiff must prove that the defendant's false, misleading, or deceptive acts were the producing cause of the plaintiff's injuries. *See* Tex. Bus. & Com. Code Ann. § 17.50 (West 2011); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

Smith's DTPA allegations largely track those of his other claims. Smith argues that the producing causes of his injuries were statements from Aldridge where he affirmatively misrepresented that (1) he would not settle Smith's case without first gaining Smith's approval; (2) he was not very optimistic that the County would accept a higher settlement demand; (3) he has preparing for trial after he rejected a settlement offer of $5000 for a release of all claims from all inmates; and (4) early in the representation, he believed that the case could be proved with overwhelming circumstantial evidence, based on the sheer number of inmates complaining. Smith produced no summary judgment evidence that any of these statements were false, misleading, or deceptive. To the extent that these

12

allegations complain of the adequacy of Aldridge's legal services, they sound in negligence and may not be fractured as an independent cause of action. *See Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also* Tex. Bus. & Com. Code Ann. § 17.49(c) (DTPA action may not lie in claim for damages based on the rendering of professional services, when the essence of those services is the providing of advice, judgment, opinion, or similar professional skill).

Because Smith failed to produce competent summary judgment evidence to each of his claims, the trial court did not err by dismissing his actions for negligence, breach of fiduciary duty, fraud, breach of contract, and DTPA violations. Smith's first issue is overruled.

### 5. Gross Negligence

In his second issue, Smith contends that the trial court erred by ordering that he take nothing on an "unpleaded" claim for gross negligence.

Smith did not explicitly assert a claim for gross negligence in his pleadings. However, he did plead that Aldridge "acted with malice and conscious indifference" during the course of his representation. That phrase is repeated some nine times in the pleadings, prefacing every factual allegation made in support of Smith's claim for professional negligence.

To recover damages on a claim for gross negligence, the evidence must reflect that (1) the defendant's acts or omissions, when viewed objectively, entailed an extreme degree of risk; and (2) the defendant had actual, subjective awareness of the risk involved, and he nevertheless proceeded in his conduct with conscious indifference to the rights, safety, or welfare of others. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21–22 (Tex. 1994); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (West 2012). Suspecting that Smith had pleaded a claim for gross negligence, Aldridge argued that he was entitled to judgment

13

as a matter of law because Smith did not plead the requisite level of awareness or produce any evidence to that effect.

On appeal, Smith does not dispute that he proffered no evidence on this point. We decline to hold that the trial court erred by dismissing this claim, unpleaded or not. Smith's second issue is overruled.

## SPECIAL MASTER

In his third issue, Smith argues that the trial court abused its discretion by refusing to appoint a special master. He contends that this refusal constituted an unreasonable discovery sanction, a denial of due process, and cruel and unusual punishment.

The appointment of a master lies within the sound discretion of the trial court. *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991). Rule 171 of the Texas Rules of Civil Procedure authorizes a court to appoint a master in chancery "in exceptional cases, for good cause." Smith sought the appointment of a master so that he might obtain assistance in finding an expert witness to testify on his behalf. This is not an "exceptional" reason warranting the appointment of a master. *Cf. id.* (holding that toxic tort case involving many defendants and several discovery motions was undoubtedly more complicated than many others, but not so complicated as to be exceptional).

With certain exceptions not applicable here, the United States Constitution does not afford any right to counsel in a civil case. *See* U.S. Const. amend. VI (providing for the assistance of counsel solely in "criminal prosecutions"). Similarly, the Eighth Amendment's proscription against cruel and unusual punishment does not apply outside the context of criminal sentencing. *See* U.S. Const. amend. VIII. This case does not implicate the protections afforded by either constitutional provision. Smith's third issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.


/s/      Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.