**Affirmed and Opinion filed October 8, 2013.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-12-00447-CV

## SHAFAII CHILDREN'S TRUST AND PARTY AND RECEPTION CENTER, INC., Appellant

## V.

## WEST AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, OHIO CASUALTY INSURANCE COMPANY, AND AMERICA FIRST INSURANCE COMPANY, Appellees

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-45389**

## O P I N I O N

Appellant, Shafaii Children's Trust and Party and Reception Center, Inc., appeals the trial court's summary judgment in favor of appellees, West American Insurance Company, Liberty Mutual Insurance Company, Ohio Casualty Insurance Company, and America First Insurance Company, on its claims for breach of contract and fraud. We affirm.

# I.    BACKGROUND

Shafaii is the named insured on an insurance policy issued by West American. The policy insured four buildings located at: (1) 1401 Holland Avenue, Galena Park, Texas; (2) 1407 Holland Avenue, Galena Park, Texas; (3) 3316 Shaver Street, Pasadena, Texas; and (4) 1000 Broadway Street, Houston, Texas. After Hurricane Ike hit Houston and the surrounding area on September 13, 2008, Shafaii filed claims for damage to three of the buildings—1401 Holland, 1407 Holland, and 1000 Broadway.

Shafaii also claimed damage to the contents or "Business Personal Property" ("BPP") at 1401 Holland. With respect to the 1401 Holland BPP claim, West American paid policy limits of $66,150. Prior to September 13, 2008, Shafaii had acquired property at 1622 Federal Road, Houston, Texas, and was in the process of relocating some of its operations and BPP from 1401 Holland to 1622 Federal. The 1622 Federal building was a "newly acquired location" not listed in the policy's declarations. Shafaii reported damage to BPP at 1622 Federal. West American contracted with Stoner and Company to complete a joint physical inventory of the BPP at 1622 Federal, which estimated the damage to the BPP at the newly acquired location to be $288,500. However, West American determined that the policy set the coverage limit for BPP at 1622 Federal—a newly acquired location—at 10% of the declared limit. Therefore, according to West American, because the declarations provided a BPP limit of $66,150 for 1401 Holland, the BPP limit for 1622 Federal was $6,615 or 10% of $66,150. On September 24, 2009, in addition to paying Shafaii's claims related to 1401 Holland, 1407 Holland, and 1000 Broadway, West American paid $6,615 on Shafaii's claim for BPP

damage at 1622 Federal.[1]

The original policy provided an extension of coverage to BPP at "newly acquired" locations at 10% of the declared limit, capped at $100,000 per building. An endorsement modified the policy by increasing the $100,000 limit to $250,000. Shafaii interpreted this $250,000 limit to be in addition to the 10% of the declared limit in the policy. Specifically, on March 15, 2010, Shafaii's attorney wrote West American, claiming that "the insured was informed by all persons connected with Western [sic] American Insurance Company—including, but not limited to, the originating agent and several adjusters—that the coverage found in the Texas Master Pak Plus endorsement, including the $250,000 business personal property coverage, applied to this loss." Shafaii demanded payment of the $250,000 limit on BPP from West American pursuant to the policy's endorsement.

On July 22, 2010, Shafaii sued: (1) West American, Liberty Mutual, Ohio Casualty Company, and America First (hereinafter collectively, "West American"); (2) Pasadena Insurance Agency; and (3) ISO Commercial Risk Services, Inc., for breach of contract, Insurance Code and DTPA violations, and breach of the duty of good faith "accompanied by oppression, fraud, or malice."

West American filed a hybrid no-evidence and traditional motion for summary judgment, which sought: (1) summary judgment on the interpretation of the insurance policy with respect to BPP coverage limits and (2) summary judgment on Shafaii's misrepresentation claims. The trial court granted West American's motion for summary judgment and ordered that Shafaii take nothing on its claims against West American.[2]

---

[1] Shafaii's claims for 1401 Holland, 1407 Holland, and 1000 Broadway are not at issue in this case.

[2] On November 2, 2011, Shafaii filed a motion to reconsider, which the trial court denied

3

Shafaii brings two issues in this appeal: (1) whether the trial court erred in granting summary judgment on the coverage issue because it found West American's interpretation of the policy to be the only reasonable interpretation and (2) whether the trial court erred in granting no-evidence summary judgment on Shafaii's fraud claim.

## II.     BPP COVERAGE

In its first issue, Shafaii contends it need only show that its policy interpretation is reasonable, and the trial court erred by finding West American's interpretation of the policy to be the only reasonable interpretation.

### A.     Rule 166a(c) summary judgment standard of review

We review the trial court's granting of a summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). To be entitled to summary judgment under rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and the response in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.*

---

on February 27, 2012. On April 27, 2012, Shafaii filed a motion to dismiss its claims against Pasadena without prejudice, which the trial court granted on May 2, 2012. On May 4, 2012, Shafaii nonsuited its claims against ISO without prejudice. With Shafaii's claims against Pasadena having been dismissed, and its claims against ISO having been nonsuited, the trial court's October 4, 2011 summary judgment became final. Shafaii filed its notice of appeal on May 9, 2012.

4

**B.** **Standard for policy interpretation**

When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the parties' intent. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Our primary concern when we construe an insurance contract is to ascertain the parties' true intent as expressed in the contract. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 154 (Tex. 2010) (per curiam). We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be rendered meaningless. *Gilbert Tex. Constr.*, 327 S.W.3d at 126. We begin our analysis with the policy's language. *Id.*

Whether an insurance contract is ambiguous is a question of law. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). If a policy provision has only one reasonable interpretation, it is unambiguous and we must construe it as matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). If the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous. *Page*, 315 S.W.3d at 527. Parties' conflicting interpretations alone do not establish ambiguity. *Id.*

**C.** **Interpretation of the policy**

Shafaii argues that the trial court failed to give effect to all provisions of the policy. The policy's "Building and Personal Property Coverage Form" provides the following regarding coverage of newly acquired or constructed property:

**A.** **COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\* \* \*

**5.** **Coverage Extensions**

5

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a.     Newly Acquired or Constructed Property**

\*     \*     \*

(2)     You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Your Business Personal Property shown in the Declarations, but not more than $100,000 at each building.

The endorsement modifies the insurance provided as follows:

COMMERCIAL PROPERTY COVERAGE PART

The following is a summary of the enhancements provided in this endorsement. The limits and deductibles shown below apply at each designated location. If a limit is shown elsewhere in the policy for any of these coverages, then that limit applies in addition to the limits shown below. If a different deductible amount is shown in the policy for any of these coverages, then that deductible will be the applicable deductible. For complete details on the coverages provided, refer to the specific policy language.

\*     \*     \*

V.     The Coverage Extensions section of Part A COVERAGE in the Building and Personal Property Coverage Form attached to this policy is changed as follows:

\*     \*     \*

6

B. The Your Business Personal Property limit of $100,000 shown in paragraph A.5.a.(2) is replaced with a $250,000 limit.

Shafaii claimed $288,500 in BPP damage at a newly acquired location. In its motion for summary judgment, West American argued that the main policy set the limit for BPP coverage at a newly acquired location at 10% of the BPP limit shown in the declarations, not to exceed the $100,000 ceiling. West American further argued that the endorsement increased the $100,000 ceiling to $250,000, but did not alter the 10% threshold limit. Therefore, West American asserted the policy unambiguously limits BPP coverage on a newly acquired location to the 10% limit, unless that amount exceeds $250,000, in which case the $250,000 ceiling is triggered.

Shafaii claims it is entitled under the policy to recover $250,000 on top of the $6,615. Shafaii contends that, although the endorsement "enhanced" the coverage extension for newly acquired property from $100,000 to $250,000, it received no enhanced coverage under West American's interpretation of the policy.[3] Therefore, according to Shafaii, West American's interpretation rendered the term "enhancements" meaningless. Shafaii argues that to give the term "enhancements" meaning, it must be read in conjunction with the endorsement's "in addition to" clause.

The endorsement provides, in relevant part: "If a limit is shown elsewhere in the policy for any of these coverages, then that limit applies in addition to the limits shown below." The parties agree that the first half of the clause—"[i]f a limit is shown elsewhere in the policy for any of these coverages"— unambiguously refers to the 10% limit for BPP coverage at a newly acquired

---

[3] We note that the policy endorsement covered almost 30 subjects of commercial property insurance coverage.

7

location, i.e., $6,615 in this case. The parties, however, dispute the meaning of the second half of that clause: "then that limit applies **in addition to** the limits shown below." (Emphasis added). Shafaii asserts, based on the parties' conflicting interpretations, that the second half of the clause, i.e., the "in addition to" clause, is ambiguous.

Shafaii complains that, under West American's interpretation, the "in addition to" clause "raises one ceiling ($100,000), which never applies, to a higher ceiling ($250,000), which also never applies," thereby rendering the second half of the clause meaningless. Shafaii argues that its interpretation gives meaning to both the term "enhancements" and the "in addition to" clause. According to Shafaii, the limit in the endorsement is $250,000, and the limit in the policy is $6,615. Thus, Shafaii concludes that the 10% BPP limit in the policy is "in addition" to the $250,000 limit in the endorsement.

According to West American, the coverage extension provides a limited extension of coverage for property acquired after policy inception that would not otherwise be covered. West American argues that the language of paragraph A.5.a.(2) sets up a two-tiered limit, imposing a 10% threshold limit of the relevant BPP limit, capped by a ceiling of "not more than [$250,000] at each building." We agree with West American's interpretation.

The endorsement's preamble specifically provides that policy limits "shown elsewhere in the policy for any of these coverages" apply "in addition to the limits shown" in the endorsement. Because the endorsement contains no language modifying or affecting the 10% threshold, the endorsement increases the $100,000 ceiling to $250,000 per building, without altering the 10% threshold limit. Thus, the plain language of the policy and the endorsement, when read together, unambiguously limits BPP coverage at the newly acquired location to 10% of BPP

coverage, up to $250,000.

Under Shafaii's interpretation, the "in addition to" language would mean the endorsement's $250,000 limit is additional coverage that is combined with the 10% limit, resulting in a single limit of $256,615. This would result in BPP coverage for a newly acquired location that is four times the amount of BPP coverage of the declared limits, and is contrary to the plain language of paragraph A.5.a.(2), which limits coverage for BPP at newly acquired locations as 10% of the BPP limit on locations described in the declarations. Applying the 10% limit "in addition to" the $250,000 limit on the same coverage means applying the 10% limit first, unless it exceeds the $250,000 limit. Finally, with respect to Shafaii's claim that it received no enhanced coverage, West American points out Shafaii did not have BPP limits that would trigger the endorsement's $250,000 ceiling.

Shafaii states that the policy is ambiguous because the parties put forth conflicting interpretations of the "in addition to" clause. Shafaii contends that because there are two reasonable interpretations of the policy, we should construe the policy in its favor and against West American. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) ("Only if an insurance policy remains ambiguous despite these canons of interpretation should courts construe its language against the insurer in a manner that favors coverage."). However, the fact that West American and Shafaii dispute the meaning of the "in addition to" clause does not make the policy ambiguous. *See Page*, 315 S.W.3d at 527.

Moreover, in its reply brief, Shafaii relies on the affidavit of Raj Shafaii to show that its interpretation is reasonable. In his affidavit, Shafaii recites that he was told by various representatives and adjusters of West American that coverage for BPP at 1622 Federal included the $250,000 limit of liability in the endorsement in addition to the 10% limit for newly acquired properties. Shafaii argues, because

9

all inferences must be taken in its favor, and all summary judgment evidence offered by it must be taken as true, *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008), we must take as true its evidence that West American's representatives agreed with Shafaii's interpretation of the policy and endorsement.

Shafaii's reliance on Raj Shafaii's affidavit in support of its interpretation of the policy is misplaced. Extrinsic evidence is not admissible for the purpose of creating an ambiguity in an insurance policy. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex. 2009) (per curiam); *see also Fiess*, 202 S.W.3d at 747 ("Ambiguity must be evident from the policy itself; it cannot be created by introducing parole evidence of intent."). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation[s], and admit extraneous evidence to determine the true meaning of the instrument." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (internal quotation marks and citations omitted). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is unambiguous, and we may not accept parol or extrinsic evidence as to the parties' intent. *Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Because we conclude that West American's interpretation of the policy is the only reasonable interpretation, we do not consider Raj Shafaii's affidavit in support of Shafaii's interpretation of the policy.[4] The trial court thus did not err in granting West American's traditional summary judgment on Shafaii's breach of

---

[4] Shafaii also argues that West American adds the words "ceiling" and "threshold" to the policy to arrive at its interpretation, thereby establishing that West American's interpretation is unreasonable. A reading of West American's appellate brief reflects that it used these words merely in aid of its interpretation of the policy, not to add words to the policy.

contract and breach of good faith and fair dealing claims.[5]

We overrule Shafaii's first issue.

## III.  FRAUD

In its second issue, Shafaii asserts that the trial court erred in granting West American's no-evidence motion for summary judgment on fraud.[6]  Shafaii contends that it raised an issue of material fact regarding the misrepresentation element of fraud and regarding the reliance element of fraud.

West American filed a combined traditional and no-evidence motion for summary judgment, including a request for summary judgment as to Shafaii's fraud claim.[7]  The trial court did not specify on what ground it granted summary

---

[5] West American also argued in its motion that it was entitled to summary judgment on Shafaii's "bad faith" claims, as predicated on Shafaii's contract claim and West American's allegedly incorrect policy interpretation.  *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340–41 (Tex. 1995) (concluding that no breach of duty of good faith and fair dealing occurred where there was no absence of a reasonable basis for denying policy benefits).  In its response, Shafaii relied on West American's alleged contract breach to argue that its bad faith claims were not barred.  Likewise, on appeal, Shafaii argues exclusively that the trial court erred by finding West American's interpretation to be the only reasonable one and provides no additional reasoning or evidence why the trial court should not have granted summary judgment as to Shafaii's bad faith claims.  *See Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 941–42 (Tex. App.—San Antonio 1996, no writ) (affirming grant of summary judgment on bad faith claim where insured put forth no allegation or evidence why general rule from *Stoker*—"an insured does not have a bad faith claim in the absence of a breach of contract by the insurer"—should not be applied).

[6] Shafaii does not challenge the summary judgment as to any other misrepresentation cause of action and thus has abandoned any Insurance Code and DTPA claims on appeal.  *See Duerr v. Brown*, 262 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[7] West American's motion states:

**D.  Defendants are entitled to summary judgment on Plaintiff's claim for fraud because Defendants made no actionable representations to Plaintiff.**

Plaintiff alleges that Defendants['] violation of its bad faith duty [sic] "was accompanied by oppression, fraud or malice."  To the extent this amounts to an allegation of misrepresentations under the common law or the Texas Insurance Code and the DTPA it is without merit as a matter of law.  First, there is no evidence of any specific misrepresentation by any defendant.  Thus, there is no evidence to support the claim of fraud.

11

judgment. The parties agree that this motion fairly challenges, on a no-evidence basis, the existence of a misrepresentation. However, the parties disagree as to whether this motion constitutes a "no-evidence motion" on the element(s)[8] of detrimental reliance.[9] In any event, we conclude that Shafaii has failed to raise an

---

> Second, Plaintiff's factual recitations make it clear that Plaintiff is complaining about conduct by Defendants that occurred after the loss. Paragraph XI, which contains the fraud allegation, first complains of Defendants' "breach of contract" and then alleges Defendant's breach of its duty of good faith was "accompanied by oppression, fraud or malice." The only breach of contract alleged in this case is the denial of a part of Shafaii's claim for BPP coverage for [a] newly acquired location. Thus, the plaintiff[']s own fraud allegations refer solely to post-loss conduct that took place during investigation and adjustment of the claim. Such post-loss fraud claims are invalid as a matter of law under established Texas law.
>
> Post-loss misrepresentations do not give rise to DTPA or Insurance Code or common law liability. Statements made in connection with post-loss investigation or handling of a claim can never be actionable misrepresentations because an insured does not rely or "take action" to their detriment based on such statements but rather on affirmative representations of coverage. Defendants are entitled to summary judgment on Plaintiff's claim for fraud, whether under the common law, or the Insurance Code or the DTPA.

(Citations omitted).

[8] Detrimental reliance combines the elements of reliance and injury. These are often listed as separate elements in case law although combined into one element in the pattern jury charge. *See Gray v Waste Res., Inc.*, 222 S.W.3d 522, 524–25 (Tex. App.—Houston [14th Dist.] 2007, no pet.); State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Ins. & Emp't* § 105.2 (2012). We will consider it as one element in the remainder of the opinion.

[9] Shafaii responded to West American's motion as follows:

**II. Procedural Posture**

. . .

Defendant's Motion identifies only one element of the fraud cause of action that is challenged on a no-evidence standard: whether a misrepresentation was made by Defendants or their agents, employees, or representatives. The Affidavit of Raj Shafaii is attached hereto and incorporated herein for all purposes. The Affidavit contains detailed statements of the representations that were made to Plaintiffs about the applicable limits of coverage and such representations directly contradict the Defendants [sic] position in the denial of benefits and in this case, including Defendant's [sic] Motion. There is no other element of the fraud cause of action, or any other cause of action identified in Defendant's [sic] Motion as being subject to the no-evidence motion for summary judgment and the

12

issue of material fact to withstand no-evidence summary judgment and has waived any traditional summary judgment issue. *See Garza v. Terra Nova Ins. Co., Ltd.*, No. 14-08-00653-CV, 2010 WL 1992576, at \*2 (Tex. App.—Houston [14th Dist.] May 20, 2010, pet. denied) (mem. op.) ("If the trial court does not specify which it granted, as in this case, we may uphold the summary judgment on either ground.").

## A. Rule 166a(i) summary judgment standard of review and specificity requirement

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the nonmovant against whom the summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (describing no-evidence motion for summary judgment as "essentially a motion for a pretrial directed verdict"). If the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact, then the trial court cannot properly grant the no-evidence motion for summary judgment. *Smith*, 288 S.W.3d at 424. More than a

---

Defendants are therefore limited to such allegations. It is well settled that a trial court cannot grant a summary judgment on grounds not presented in Defendant's [sic] Motion.

(Citations omitted).

scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions—the nonmovant "is not required to marshal its proof." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 847 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

A no-evidence motion for summary judgment "must state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). A no-evidence motion should not be general or conclusory. *Id.* 166a cmt. to 1997 change. We first review the no-evidence summary judgment, then, if necessary, the traditional summary judgment as to Shafaii's fraud claim. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## B. Whether Shafaii raised a fact issue as to West American's pre-hurricane representation

Shafaii identified one pre-hurricane representation in the affidavit attached to its response to the motion for summary judgment. Raj Shafaii testified in his affidavit that "[a]t the time of purchase, or shortly thereafter, Raymond Coronado, of Pasadena Insurance Agency, Inc., assured me that the coverages found in the Texas Property Master Pak Plus extended the coverages found in the above policy to the limits of liability shown in the Texas Property Master Pak Plus." We conclude that Shafaii failed to bring forth a scintilla of evidence regarding the falsity of the pre-hurricane statement allegedly made by Coronado.

West American specifically challenged: "there is no evidence of any specific *misrepresentation* by any defendant." (Emphasis added). The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon

it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). However, courts often group together the first two "elements" of fraud, as does the Pattern Jury Charge *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (describing first fraud element as "ma[king] a material representation that was false"); *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 735–36 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (same); State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Ins. & Emp't* § 105.2 (2012) (listing first element as "mak[ing] a material misrepresentation"). "The term misrepresentation 'means a false statement of fact.'" *Moore*, 321 S.W.3d at 735; *see also Black's Law Dictionary* 1091 (9th ed. 1999) ("making a false or misleading assertion about something, usually with the intent to deceive" and "an assertion that does not accord with the facts"); Restatement (Second) of Torts § 525 cmt. b (1977) ("an assertion not in accordance with the truth"). Thus, a fair reading of West American's motion is that it was challenging whether any defendant made a false representation.

What Coronado allegedly represented to Raj Shafaii—"that the coverages found in the Texas Property Master Pak Plus extended the coverages found in the above policy to the limits of liability shown in the Texas Property Master Pak Plus"—substantially reflects what the Master Pak in fact states it does, which is provide enhancements to the commercial property policy coverages, including applying the limits and deductibles shown in the endorsement. Raj Shafaii does not aver that Coronado made any false assertion regarding the BPP policy or endorsement limit. Thus, we discern nothing in Coronado's alleged assertion that misrepresented the coverage terms of the policy or the endorsement. *Cf. Provident*

15

*Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 199–200 (Tex. 1998) (concluding, in context of Insurance Code and DTPA, that insurer's pre-approval of insured's surgery was not "a misrepresentation of the terms of an insurance policy; or an assertion with respect to insurance that was untrue"). Therefore, because Shafaii failed to adduce any evidence that West American made a pre-hurricane misrepresentation, we overrule Shafaii's issue as to this aspect of its fraud claim.

## C. Whether Shafaii raised a fact issue as to West American's post-hurricane representations

Next, we consider whether any of Shafaii's alleged post-hurricane representations raise a fact issue regarding the existence of specific misrepresentations.

Hurricane Ike occurred on September 13, 2008. Shafaii made its property damage claims on September 15, 2008. It took one year for West American to make any payments on the claims. In September 2009, West American paid $6,615 on Shafaii's $288,500 claim for the BPP damage at the newly acquired location. In his affidavit, Raj Shafaii identified numerous times that West American or its agents, including its claims handlers and adjusters, made specific representations about application of the additional $250,000 coverage limit for the damaged BPP at 1622 Federal after the hurricane while processing Shafaii's claims. Shafaii also averred that in May 2009 he specifically asked Dave Reitzel (an adjuster with Liberty Mutual) "for guidance on what to do with the damaged property," and Reitzel informed Shafaii that the damaged property at 1622 Federal "had no salvage value and [he] should discard it." Shafaii stated: "In reliance on his statement I discarded the property and expected a check."

We first consider Reitzel's statement that the damaged property at issue had "no salvage value" so Shafaii should discard it. Raj Shafaii testified that he relied

16

on Reitzel's statement regarding lack of salvage value to discard the property. However, Shafaii offered no evidence to the trial court that this assertion was not true; i.e., evidence that the damaged property in fact had some salvage value. Therefore, because Shafaii failed to adduce any evidence that the "no salvage value" statement was a misrepresentation, we also overrule Shafaii's issue as to this aspect of its fraud claim.

Arguably, the alleged statements that the $250,000 endorsement coverage limit applied to the BPP damage at 1622 Federal were material representations that were false because, under the terms of the unambiguous policy, the policy's threshold limit capped Shafaii's claim payout at 10% of the declared BPP limit shown in the declarations for 1401 Holland, or $6,615. Thus, we cannot affirm summary judgment based on the theory that Shafaii did not offer a scintilla of evidence as to these statements being misrepresentations.

However, in its motion, without expressly specifying whether it was presenting a no-evidence or a traditional summary judgment ground, West American further argued that post-loss misrepresentations are not actionable because an insured cannot rely or take action based on such misrepresentations after the loss has occurred.

On appeal, Shafaii addresses the "no evidence of detrimental reliance" issue,[10] arguing that the trial court erred by disregarding evidence that raised an issue of material fact. Shafaii contends that, contrary to West American's argument that Shafaii's allegations refer solely to post-loss misrepresentations, the "fraud claim correctly rests on [West American's] pre-loss misrepresentations" and

---

[10] In its summary judgment response, Shafaii indicated that it only interpreted West American's motion as raising a "no evidence of misrepresentation" issue. In its appellate reply brief, Shafaii argues that West American did not specifically identify detrimental reliance as an element of fraud for which it claimed there was no evidence.

17

"refers to the damage to property that occurred as a direct result of Shafaii's reliance on [West American's] misrepresentations."[11]  But the only representation Shafaii relies on for his argument that he has raised a fact issue on detrimental reliance is the statement by Reitzel that the damaged property had no salvage value and Shafaii should discard it.  However, we already have concluded that this statement is not otherwise actionable because Shafaii failed to bring forth any evidence as to its alleged falsity.  Shafaii does not argue that he has raised a fact issue to defeat any "no evidence of detrimental reliance" issue based on any of the post-hurricane coverage misrepresentations.  Thus, construing West American's argument as a no-evidence ground for summary judgment, Shafaii has not pointed to even a scintilla of evidence that raises a fact issue on detrimental reliance.

Moreover, assuming solely for purposes of our analysis, without deciding, that Shafaii correctly argues (in its reply brief) that West American's motion did not comply with the specificity dictates of rule 166a(i) and thus the trial court's granting no-evidence summary judgment with regard to the reliance element would be improper,[12] Shafaii does not assert on appeal that the trial court erred by granting traditional summary judgment on its fraud claim.  While Shafaii was not required to respond to any traditional summary judgment issue concerning detrimental reliance in order to complain on appeal that the trial court erred,[13] Shafaii entirely failed to raise, much less offer any argument or authority on, this issue in its brief.  Therefore, this issue is waived.  *See La China v. Woodlands Operating Co.*, —S.W.3d—, No. 14-12-00066-CV, 2013 WL 4017373, at *4 (Tex.

---

[11] In other words, Shafaii considers the "loss" to be when it threw away its damaged property, while West American considers the "loss" to be the date of the hurricane.

[12] *See Cuyler v. Minns*, 60 S.W.3d 209, 213–14 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

[13] *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23, 225 (Tex. 1999).

App.—Houston [14th Dist.] Aug. 8, 2013, no. pet. h.) ("We may not address an issue not asserted or briefed by [appellant]."); *Cuyler v. Minns*, 60 S.W.3d 209, 216 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (affirming as to appellant's DTPA claims where she "offered no argument or authority to avoid summary judgment" in her appellate brief).

Because Shafaii failed to raise a genuine fact issue on its fraud claim, and otherwise waived any traditional summary judgment challenge, we cannot conclude that the trial court erred in granting summary judgment. Therefore, we overrule Shafaii's second issue.

## IV.  CONCLUSION

Accordingly, we affirm the trial court's summary judgment.


/s/      Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison, and McCally.